THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ BARRETO PÉREZ, Defendant and Appellant.

Nos. 17301, 17392. Decided June 22, 1962.

---

*Angel Viera Martínez* for appellant. *J. B. Fernández Badillo,*
 Solicitor General, and Rodolfo Cruz Contreras, Assistant
 Solicitor General, for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr.
 Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

■ Appellant was charged with murder in the first degree and found guilty of murder in the second degree. He challenges the weighing of the evidence by the jury. He alleges that he acted in self-defense and that if no credit is given to that evidence, he should have been found guilty of manslaughter. We held recently, affirming previous decisions, that "the jury has under the law power to judge of the credibility of the witnesses, and we will not disturb its findings unless it is shown that it abused such power in giving credit to the witnesses for the prosecution." *People* v. *Aletriz, ante*, p. 621.

1, 2. The foregoing disposes of the first two errors. The defendant and the victim were neighbors and resided at Esteban Padilla Street of Bayamón. The evidence shows that defendant went to the victim's house and told him he wanted to speak to him. Apparently he had been drinking intoxicating liquor. They left in the victim's vehicle and headed along highway No. 2 to a place near the bridge which crosses the Bayamón River. They parked under some bamboo trees on the side of the road. When the deceased left his house he was in the company of his brother-in-law Pedro Seda Collado, who followed them in another vehicle and arrived at the scene of the occurrence. Seda testified that when he arrived at the place the deceased told him "that Barreto asked me to get on the station wagon, that he wanted to talk to me, and now he tells me that he carries a pistol in the station wagon to shoot me." The deceased was standing behind the station wagon and defendant in the front. The witness went over to defendant and the latter had a pistol in his hand pointing to the ground. The witness asked him what he had against the victim and defendant answered, "that this man thinks I'm a *pendejo*." To which the witness remarked if he was going to fire at a man who was unarmed. He did not speak to him any more. Shortly afterwards the

deceased came out from behind the station wagon and defendant fired several shots at him. The victim fell to the ground. Thereupon defendant walked toward the station wagon in which they had gone to the place, took out an iron rod and placed it by the side of the victim's body. A passing car stopped and removed the deceased to the district hospital. Defendant remained at the place.

■ The evidence for the defense consisted in that the deceased had assaulted him with the iron rod which we have mentioned and that he had to fire in self-defense. He did not receive any wound or contusion. He contends that in the event his self-defense is untenable, the verdict should have been for manslaughter. However, the jury did not give credit to his version. It believed Seda's testimony. And the prosecution evidence establishes that it was defendant who invited the deceased to come out of the place where he was because he wanted to talk to him. The evidence does not establish the ingredient of sudden quarrel and heat of passion.

■ 3. The third error challenges the procedure followed in determining whether the statement given by defendant before the district attorney was voluntary. Appellant maintains that the procedure was prejudicial to him because the jurors always know that the judge has made a preliminary determination that it was voluntary. The judge in this case followed the procedure which we sanctioned in *People* v. *Declet*, 65 P.R.R. 22 (1945) ; *People* v. *Fournier*, 77 P.R.R. 208 (1954), and ratified recently in *People* v. *Andrades*, 83 P.R.R. 818 (1961), where we said that the jury should always be withdrawn at the first stage and that there was no "need of informing in the instructions that the judge has made a preliminary determination that there is evidence to show that the confession is voluntary." And in this case it does not appear that the jury was informed that the judge

had made a preliminary determination in the sense that the statement was voluntary.

4. We will consider the fourth error when discussing the other errors assigned bearing on the instructions given by the trial judge. We turn to consider the fifth and sixth errors.

■ 5. The fifth error is to the effect that the trial judge, in referring to an incident between the district attorney and the defense attorney, stated "The latter would be immaterial." The judge made the comment when the defense insisted that the stenographer who took down the statement given by defendant before the district attorney inform him whether the phrase "and got hold of a rod" had been crossed out in the notebook. The defense was of the opinion, and it so informed the court, that it was very important to him "because what is involved is the fact of the erasures." Thereupon the court explained "What is involved is the fact of the incident which the court has said it wants to avoid, because it considers that it is improper as against the rights of the parties. That is why I am compelled to avoid these incidents and that those comments be made. That is the purpose of my words." It may therefore be seen that the court forthwith explained the purpose of the comment and everything was clarified to the jury. The judge referred in his comment to the incident between the district attorney and the defense. And the truth is that, as we shall presently see, even if the judge had referred to the phrase, it was also immaterial because the concept which apparently had been crossed out appeared in the sworn statement.

■■ 6. The sixth error challenges the ruling of the court admitting in evidence a statement given by defendant before the district attorney and which was taken down by the stenographer who transcribed it. Defendant did not subscribe it. Appellant maintains that it was error to admit it for the following reasons:

(a) He did not subscribe the statement;

(b) The pertinent legal warnings were not given to de-fendant before giving the statement;

(c) He had no legal assistance;

(d) He was drunk when he made the statement.

The grounds adduced by appellant in support of his assignment are not valid. *People* v. *Green*, 75 P.R.R. 805 (1954), decides adversely to him the ground stated under letter (a). The grounds under letters (b) and (c) were decided adversely to his contention in *Rivera* v. *Warden*, 80 P.R.R. 800 (1958); *People* v. *Lebrón*, 61 P.R.R. 634 (1943); and *People* v. *Montes*, 64 P.R.R. 306 (1944).

Regarding the allegation that appellant was in a state of intoxication, what the evidence reveals is that he was drunk at the time of the occurrence but not when he gave the statement objected to.

■■ From a reading of the instructions as a whole, it appears that the judge explained adequately to the jury what was its function. He emphasized and made it clear that it was their duty to consider the statement in all its aspects. To that effect he said: "If you find from my instructions— I am going to elaborate on that concept—that it is voluntary, consider it; if you find that it is involuntary, disregard it." The explanation which the judge made to the jury on what is meant by a confession and what constitutes an admission, is fundamentally correct. It is similar to that made by the Court of Appeals for the District of Columbia in *Jones* v. *United States*, 296 F.2d 398 (1962), in stating:

"Confessions are admissions of crime, whereas admission concerns only some specific fact which in turn tends to establish guilt or some element of an offense."

■ 7, 8. The seventh and eighth errors challenge "the instructions given by the trial court to the jury on malice, premeditation, deliberation, and murder." Appellant con-

tends that those instructions are erroneous. And that it was error to instruct the jury to the effect that:

"a. 'To use intentionally a dangerous weapon and to kill a person, the inference to be withdrawn prima facie is that defendant is guilty of murder.'

"b. '... and the fact of pointing and discharging a firearm at a person and killing him is sufficient for the existence of malice aforethought and deliberation, notwithstanding the rapidity with which the act is executed.' "

■ Appellant has followed the practice which we have censured so often of picking out sentences from the whole of the instructions to support his contention. The instructions must be weighed as a whole. Thus, we copy those which the trial judge transmitted on this matter:

"Malice is by itself aforethought. The premeditation may be formed shortly before the act, and premeditation may exist notwithstanding the rapidity with which the act is carried out.

"There is express malice when a person composedly and coolly and with deliberate purpose kills unlawfully another person. Such purpose is evidenced by the exterior circumstances capable of revealing and discovering the designed intention of the crime. And implied malice is that which the law infers from the wrongful act, considered by itself, and so, when the killing of a person is evident and there is no circumstance in the evidence tending to mitigate, excuse, or justify the act executed by defendant, then the existence of implied malice is presumed.

"When the circumstances point to the killing of a human being by another, malice is presumed.

"As I say, malice is by itself inherently premeditated. And malice aforethought may be formed shortly before the act. And malice aforethought may exist notwithstanding the rapidity with which the act has been carried out.

"The intention may manifest itself through one of the following two elements, either of which is sufficient to determine the existence of the intention to cause the death of a fellow creature. Such intention may manifest itself through one of the following two elements:

"1. The specific intention to kill, considered as the equiv-
alent to the desire and direct, express and established pur-
pose to kill; that is, it presumes spontaneity in the direct.
purpose to kill, or

"2. The intention to carry out an act or to cause grave:
bodily injury, the probable consequence of which is the death.
of a person.

"I must tell you at this point that, notwithstanding the
presumption of malice referred to, namely, that which I have
stated to you, the existence of malice is a question of fact to be
weighed exclusively by the jury on the basis of the evidence of-
fered by the prosecution; or if from the whole of the evidence
there appear circumstances of mitigation, excuse, or justifica-
tion, or if from the evidence there appears a lack of criminal
intention, the presumption should be rejected, and in such case
the jury has the right to make its own conclusions on the exist-
ence or absence of malice. And if there is reasonable doubt
according to what I have said, consider this doubt as to the
existence of malice. If you have a reasonable doubt as to the
existence of malice, you should disregard the existence of malice."

And on the other points challenged the judge stated:

"The law divides murder into two degrees: murder in the
first degree and murder in the second degree. All murder which
is perpetrated by means of poison, lying in wait, torture, or
by any other kind of wilful, deliberate, and premeditated killing,
or which is committed in the perpetration or attempt to per-
petrate arson, rape, robbery, burglary, or mayhem, is murder
in the first degree. And murder in the second degree is the un-
lawful killing of a human being with malice aforethought but
without deliberation, it being sufficient that the killing be carried
out without considerable provocation, or when the attendant
circumstances show a perverted and malignant heart.

"To use intentionally a dangerous weapon and to kill a per-
son, the inference to be drawn prima facie is that defendant is
guilty of murder.

"In murder in the first degree the evidence must show that
there has been a specific and deliberate intention to take life.
And the absence of specific and deliberate intention to kill re-
duces the crime of murder in the first degree to murder in the
second degree.

"The term wilfully employed in our laws implies the purpose to perform the act; therefore, the killing is regarded as wilfully caused when there is a specific intention to take life. It is not necessary that there elapse some time between the killing and the purpose or design to kill; all that is necessary is that the act of killing be preceded by the occurrence of wilful deliberation and premeditation on the part of the agent of the crime, without taking into account the rapidity with which the .acts of thinking could have occurred nor the rapidity of the .act of killing.

"The term 'malice aforethought' means that the act was preconceived and carried out after reflection.

"The term 'deliberation' means a state of calmness or coldbloodedness; it does not mean to ponder or reflect during much time, but an intention or purpose to kill executed by defendant in a state of calmness as a result of the deliberate purpose of satisfying a passion or vengeance, or to execute any other unlawful act. The existence of the design to kill at the time the mortal wound was inflicted is sufficient.

"The 'malice aforethough' and 'deliberation' depend on the circumstances of the case, and the fact of pointing a firearm at a person and discharging it and killing him is sufficient for the existence of malice aforethought and deliberation, notwithstanding the rapidity with which the act has been carried out.

" 'Deliberation,' as a subjective mental state which it is, may be inferred from the act of discharging a weapon, but the discharge is not conclusive in itself; it depends on the existence of deliberation. The presence or absence of deliberation is a question of fact for you, gentlemen of the jury.

"I must instruct you, furthermore, that deliberation is a state of greater calmness in which the actor ponders and chooses different actions and reasons as respects the commission of the act and its consequences.

"In murder cases, as in other criminal causes, the CORPUS DELICTI should be established as an essential condition of guilt. The fact of the killing and the cause which produced it are the only elements of the CORPUS DELICTI. And in order to find a person guilty of murder, it is necessary to establish those elements of the CORPUS DELICTI and then that defendant was the person who committed it.

"In other words, crimes consist of elements. The CORPUS DELICTI in murder is the existence of a dead person, of the victim; and then, the second element, that the victim is not the victim of chance, not of the will of God, of nature, but the victim of a criminal act. Such act and that criminal hand and those two elements constitute the CORPUS DELICTI. Those two elements must be connected with the CORPUS DELICTI. That is what is meant by what I have told you."

The instructions on malice, premeditation, deliberation, and murder comply with our decisions. *People* v. *Méndez*, 74 P.R.R. 853 (1953), and *People* v. *Túa*, 84 P.R.R. 37 (1961).

 Referring to the instructions to the effect that "To use intentionally a dangerous weapon and to kill a person, the inference to be drawn prima facie is that defendant is guilty of murder," in *People* v. *Méndez*, *supra*, we said that it was essentially correct.

 We now turn to consider the other instruction picked out and challenged. It is that in which the judge stated ". . . and the fact of pointing a firearm at a person and discharging it and killing him is sufficient for the existence of malice aforethought and deliberation, notwithstanding the rapidity with which the act has been carried out." In *People* v. *Méndez*, *supra*, we said in commenting a like instruction:

"Now, malice may be inferred from the use of a weapon, since such use may reasonably imply an intent to kill or to cause injuries whose probable consequence is death. However, deliberation is a special mental state, a specific category within the general field of criminal intent, with defined contours, and is equivalent, as we have seen, to a state of relative calmness in which the actor considers and selects different factors and reasons as to the nature of the act and its consequences. The act of shooting with a weapon may be deliberate, but it may also be impulsive or impetuous. For that reason it is incorrect to say, absolutely and without any qualification whatsoever, that the firing of a weapon is enough to prove deliberation, if it is intended to mean that deliberation is automatically and ab-

solutely synonymous with the act itself of firing a weapon, and it is meant that deliberation is an integral element of the fact of firing such weapon. Deliberation, as a subjective mental state not susceptible of direct evidence, may be inferred by the jury from the act of firing a weapon. *People* v. *Rosario, supra.* As to other points, the cases above cited are correct. But it should be made clear to the jury that the act of firing a weapon is not definitively conclusive as to the presence of deliberation, and it should be indicated in the instructions that the presence or absence of deliberation is a question of fact to be determined by the jury."

And that was precisely what the judge told the jury in this case, stating as follows:

" 'Deliberation,' as a subjective mental state which it is, may be inferred from the act of discharging a weapon, but the discharge is not conclusive in itself; it depends on the existence of deliberation. The presence or absence of deliberation is a question of fact for you, gentlemen of the jury."

9. Defendant maintains that "the trial court invaded the function of the jury in telling them that although 'all the witnesses testified that they did not see defendant imbibing liquor and that they could not smell it, that fact does not deny that defendant had imbibed liquor.' " But the fact is that the judge also instructed them in the sense that "whether or not defendant had imbibed liquor, that is a question for you to decide in your deliberation." This is sufficient to dispose of this error.

■■■ 10. Appellant objects to the summary of the evidence made by the trial court. In *People* v. *Cruz,* 78 P.R.R. 74, 78 (1955) we said:

" . . . A reasonably complete summary of the evidence in the court's instructions is enough (citations), it being sufficient that the judge recite what has been substantially stated (citations). As long as the trial judge leaves to the jury the final questions of fact, as he did in this case, it is enough if he gives to the jury a general review of the evidence on both sides."

▆▆ That was precisely what the judge did in this case.

11. Appellant again picks out from the instruction the following: "The prosecution is not bound to prove the voluntariness of the admissions." The judge instructed the jury as follows: "However, in order that you may consider the confession as well as the admissions, both must be voluntary. If they are not voluntary, you may not take either one into consideration. . . Whether an admission or a confession is voluntary or not, that is a question for the gentlemen of the jury." Moreover, the district attorney actually introduced evidence on the voluntary character of the statement given by defendant, and the defense did not introduce any to the contrary. Cf. People v. Rodríguez, 65 P.R.R. 497, 499 (1946).

▆▆ Let us consider the other error, the fifteenth, which deals also with the instructions. Appellant maintains that the instructions on voluntary manslaughter and self-defense are erroneous.[1]

From the instruction copied in the footnote appellant picks out the italicized and challenges it as erroneous. He is not right. We turn to consider first the instruction on

---

[1] The judge instructed on manslaughter as follows:

"Manslaughter is the unlawful killing of a human being without malice. From my explanation of the crime of murder you know that . one of the ingredients was malice. Malice aforethought and deliberation come first, but malice is not an ingredient of manslaughter; and manslaughter differs from murder in that it does not require malice. Manslaughter is of two kinds: voluntary, when it occurs upon a sudden quarrel or heat of passion. Involuntary, when it occurs in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection.

"In order that killing may constitute manslaughter, the victim must die within one year and a day after receiving the wound or being administered the cause of the death.

"No person may be found guilty of manslaughter unless the person allegedly killed and the fact that the death was caused by defendant are established as independent acts; the former, the killing, by direct evidence; and the latter, the fact of the killing, without a reasonable doubt.

" .

mutual combat. The only thing said is that in order that the death of a person as the result of a fight may be considered as manslaughter, no undue advantage may be taken by defendant for in such case malice may be inferred. See *People* v. *Sánchez*, 24 Cal. 17 (1864). Appellant omitted the following statement made forthwith by the judge: "The use by the killer of a superior weapon is not by itself sufficient evidence from which the existence of malice may be inferred." It should be recalled that the defense consisted in that the deceased attacked him with a "rod" and that he was therefore compelled to use a firearm. In the instruction challenged the judge stated that the law on the matter must be considered together with the sentence omitted by the appellant. In other words, the judge charged the jury, if you believe that actually there was a fight between the deceased and defendant, the fact alone that the latter used a firearm while the victim had a rod does not warrant the inference of malice on the part of the killer.

■■■ 13. We turn to consider the instruction on self-defense challenged by appellant. Defendant again follows the practice of challenging only one expression, that which says: "When there is no considerable provocation on the part of the victim, the presumption is that the aggressor had malice.

---

"Manslaughter is, therefore, a voluntary or intentional act of defendant in which there is no malice nor premeditation. In that case there is a sudden quarrel or heat of passion. The provocation must be sufficient to arouse an irresistible passion in a reasonable person who ordinarily has control over himself. And it is only in consideration of human frailty that the law reduces the murder to manslaughter. *Regarding its element of sudden quarrel in mutual combat, when the death is caused in a mutual combat as a result of sudden quarrel, but which may be classified as manslaughter, it must appear that defendant did not take undue advantage.* The use by the killer of a superior weapon is not by itself sufficient evidence from which the existence of malice may be inferred. *When there is no considerable provocation on the part, of the victim, the presumption is that the aggressor had malice. No matter how serious the injurious words may seem to be, they do not constitute by themselves sufficient provocation, for a reasonable man must have patience and calmness in the face of insult and abuse."* (Italics ours.)

No matter how serious the injurious words may seem to be, they do not constitute by themselves sufficient provocation, for a reasonable man must have patience and calmness in the face of insult and abuse." In addition to the fact that this exposition of the law is correct because in a civilized society resort should not be had to violence and the life of a human being should not be taken because of mere provocations by words of mouth, no matter how injurious, unless there is imminent danger of grave bodily injury, the fact is that the judge instructed them as follows:

"The danger which justifies a defendant to commit the act charged may be real or apparent, but there must be some act which may lead a man of ordinary prudence to believe that his life was in danger or that he could suffer grave bodily injury. And the jury need not consider whether defendant was actually in danger of losing his life or of suffering grave injury, but only whether the circumstances were such as to induce a person of a sound mind to believe that his person was exposed to such danger and whether he could rationally believe it and had sufficient reason to believe it. And if he committed the act under such belief and had good reason to believe so, even if the danger were apparent, that is, even though the victim were not armed, it is your duty to acquit him."

14. The fourteenth error is frivolous. In instructing the jury the judge read certain provisions of law. Appellant alleges that the stenographer did not take down the provisions read. It is not even argued that the reading of the law by the judge was erroneous.

15. Defendant alleges that the instructions on the offense of carrying weapons prejudiced him. This is not correct. Defendant held a position in the State Insurance Fund and, apparently, at some time he was authorized to carry a weapon. The new Weapons Act of 1951 requires a permit which defendant did not have. And the judge, with

this in mind, gave certain erroneous instructions which were beneficial to defendant. He instructed them that if the jury believed in good faith that the permit which he held prior to the new act was valid, then there was no intention to violate the law. And the jury found him guilty despite that instruction.

The judgment appealed from which was rendered by the Superior Court, Bayamón Part, on March 30, 1959, will be affirmed.